Honolulu, August 2d, 1871.

## SUPREME COURT—IN BANCO.

### APRIL TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

### THE KING *vs.* KAHALEWAI.

A NEW TRIAL is not granted as against EVIDENCE unless, manifestly, a mistake has been made or injustice done, by abuse of power by the jury.

AFFIDAVITS of persons who overheard discussions in the jury room can not be shown to invalidate VERDICT.

Decision of the Court delivered by Chief Justice ALLEN.

The defendant was indicted for the crime of murder, upon which he was tried and convicted of manslaughter in the first degree; whereupon a motion was made by defendant's counsel that the verdict be set aside and a new trial ordered, on the ground, 1st, that the verdict was against the weight of evidence, and 2d, that a juror, Moanauli, after the jury had retired to consider their verdict, called in aid of an

argument for his conviction, the former life of the defendant and alleged former actions, the same not having been put in issue on the former trial, and that said juror in the jury-room manifested such a bias and prejudice against defendant as to render him an unfit person for the trial of this case, and that he could have been successfully challenged.

It is in evidence that the prisoner was a strong man, and that his wife was sickly, disabled by paralysis, and it is in proof that a short time before the alleged violence to his wife, the prisoner became very angry with Mrs. Wirt, in whose house they were residing, and in his passion broke a portion of the banisters of the house, and also some crockery, and that the persons present were frightened at his conduct.

It appears by the testimony of Mrs. Wirt that she was up-stairs when she heard the noise below, and went down and went into the room where the deceased was lying on her face, and ran to her where she was lying and called to one Antone, who was still in the room, and said, "Why do you not go to the assistance of the sick woman?" "I ran to her and lifted her up nearly in a standing position, when the prisoner came up to me and pushed me over, and the first I knew was I fell down on my back, and his wife fell out of my arms;" whereupon she, the witness, immediately left and went for a policeman.

It is further in evidence by Antone that the prisoner not only broke the dishes, but his writing desk, and jumped on the bedstead and tried to break it; that he seized his wife by the back of the neck, and jammed her head down with one hand, and Mrs. Wirt, the witness referred to, ran to her assistance and said to him "Why are you standing there?" He also corroborates the testimony of Mrs. Wirt, who swears that the prisoner pushed her back, and that she got up and ran out, and there was then remaining in the room no other person than prisoner, his wife, and the witness. The pris-oner then exhibited other acts of violence, such as throwing

the cover of his writing-desk at his wife, which, in his anger, he had broken. This, however, did not do any particular injury.

At this time, the witness says that he was standing at the door, and thinking, as he says, that the prisoner might attack him, he ran out, and stood by the open window, mauka, on the veranda, and he then saw prisoner drag his wife by the right leg from the inner room into the veranda room towards Waikiki, the entrance to that room having a step four or five inches high. He dragged her with all his strength and force, and the witness then ran for the police, and on his return with the police he looked in at the window and saw prisoner embracing his wife with his arms around her, speaking to her, but she could not reply; she was gasping for breath, and soon after died.

Dr. Trousseau, who made a *post mortem* examination, says that "although the examination does not show sufficient violence to cause immediate death, my opinion is, that had not the woman been subjected to violence of some sort she might have lived for years." He further states "that invalids, if they suffer from violence, die easier than persons in health, and in my opinion the death was caused by concussion of the brain and spinal cord by injurious causes that night."

The counsel for the defence contends that there is a conflict of testimony between the testimony of Antone and Mrs. Wirt, in relation to the presence of Antone at the window, when he says he saw prisoner drag his wife from one room to another.

Mrs. Wirt testifies that when prisoner pushed her down, she immediately left; and Antone swears that he was left with the prisoner and his wife ; all of them were frightened, and the whole transaction took but a few moments ; but there is much more reliance to be placed on Antone's testimony in relation to the dragging of the body than in the

precise time of the meeting of these parties on the street. Besides, Antone's testimony is corroborated by that of the doctor, who swears that, in his opinion, had the woman not been subject to violence of some sort she might have lived for years.

The violent temper of the prisoner is illustrated by the breaking the banisters and the dishes; by his pushing Mrs. Wirt over, and thereby letting his wife fall; by his breaking his writing-desk, and throwing the cover at his wife; and by his jumping on the bed, as if to break it down; all go to convince one that the statements of Antone of his dragging his wife from one room to another were in accordance with his conduct immediately preceding.

The jurors visited the scene of this alleged homicide, and they were enabled to judge whether Antone's testimony was consistent with the situation of the rooms.

The rule of this Court, repeatedly made, is that a new trial will not be granted for the reason that the verdict is against the weight of evidence unless it clearly appears that it is so manifestly against evidence as to lead to the conviction that a mistake has been made, or that injustice has been done through abuse of power on the part of the jury.—Howland *vs.* Jacobs, 2 Haw. Rep.; The King *vs.* Cornwell, same *vs.* Kauna, same *vs.* Heinricks, Forbes *vs.* Gibson, 3 Haw. Rep.

In this case, after a careful re-examination of the testimony, we are satisfied that the verdict was legally found, in accordance with the evidence.

In support of the second ground of exception, two affidavits are filed, in which one of the deponents declares that he was in an adjoining room to the jury room when the jury were considering the case of defendant, and overheard one of the jurors, named Moanauli, say in the discussion with each other, after the case was given to them, "That he, the defendant in this case, had been Circuit Judge at Maui, and had trampled on the law there; that he had afterward been

The King *v.* Kahalewai.

accused and imprisoned for trampling on the law here, meaning on Oahu; and now he is brought here for killing his wife, and therefore, he continued to argue, he ought to be punished severely."

Kailiuli, who had the jury in charge, in his affidavit, says that he heard J. Moanauli, one of the jurors, say, while they were deliberating on the verdict : "We are not more learned in the law (or know the law better) than Kahalewai, for he is a man that was made Circuit Judge of the island of Maui, and was afterward removed from that office ; he first trampled the law under his feet and was imprisoned for it ; this is the second time, how are we to reduce his punishment like people who do not know the law ? "

Mr. Justice Shepley, in the case of Studley *vs.* Hall, 22 Maine, 201, says : "That jurors cannot be permitted to disclose their deliberations and proceedings while consulting together in their private room," but the rule does not extend to their conduct at other times and other places.

In the case of Bridge *vs.* Eggleston, 14 Mass., 247, the Court ruled that jurors are not to be permitted to testify to the motives or inducements upon which they have given in a verdict.

In the case of Howland *vs.* Jacobs, 2 Haw. Rep., 157, the Court say, "that the jury make up and deliver their verdict under the solemnity of an oath, and no declarations of theirs can be received to convert its truth by showing misconduct on their part," and it would be very unsound for a court to set aside a verdict for any irrelevant conversation.

In Murdock *vs.* Summer, 22 Pick., 156, the Chief Justice declared the rule to be inflexible, that affidavits of jurors will not be received to show misconduct, or irregularity on the part of the jury, or any of them.

This principle is recognized in the 9th Cushing, in Cook *vs.* Coster, 278 ; and also in Stroker *vs.* Graham, 4 Meeson & Welsby's Rep., 724. There are no conflicting authorities on this subject.

It is a rule founded upon principles of public policy. It would not be difficult for parties to raise a question of irregular discussion by the jurors, and that they in the course of their deliberations discussed matters that ought not to have had any influence on their judgment, and may not have had any. In Cook *et al. vs.* Coster *et al.*, 9 Cush. Rep., the Court say, "that all communications among the jurors are confidential; they are intended to be secret, and it is best that they should remain so." If this principle is to be recognized, it follows of course that affidavits of one over-hearing their discussions would be clearly inadmissible.

A jury in their discussions may perhaps refer to too much irrelevant matter, but it is impossible to tell how much influence it has in the formation of their verdict. If such evidence was admissible, there would be no verdict safe from further investigation. A man intent on listening would imagine that he heard what he wanted to hear. It is a mode of obtaining intelligence of the deliberations of a jury that should be at once discouraged.

When the jury have declared their verdict in open Court, it would certainly be unsafe to admit affidavits of a limited portion of their discussions. They are supposed to make their decision upon the law and the evidence aided by the arguments of counsel and the charge of the judge, and to admit affidavits of a single remark made by a juror would compel the necessity of re-opening the whole case and examining the best testimony, which would be the whole panel. If public policy requires that all communications among the jurors should be confidential, and that they are intended to be secret, then it follows, that affidavits of persons over-hearing the discussions should not be received. In our view, it is as incompetent as the affidavits of jurors, and far less satisfactory, as only giving a very partial and imperfect representation of their deliberations. A single sentence from the whole discussion would be at best very unsatisfactory.

The King *v.* Kahalewai.

The general principle contended for by the counsel for the defendant is correct, when a juror before a trial had declared that he would be bound to find a party guilty. This, of course, is our opinion, based on the presumption that the defendant did not know at the time of the statement having been made, as it would have been a good cause of challenge. But this case, and all the authorities cited are in reference to cases totally distinct in this, they refer to declarations of jurors made before the trial, and of course concealed from the party, and not to declarations made by a juror in the discussion of the case with his fellows. But as we are of the opinion that the affidavits introduced are inadmissible on the same .principle that affidavits of jurors are, of course, the authorities cited are not applicable.

Exceptions overruled.

Attorney General A. F. Judd for the Crown.

Messrs. C. C. Harris and F. H. Harris for the defendant.